**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER JUNE,**

                                          **Plaintiff,**

         **v.**                                              **9:09-CV-323**
                                                             **(FJS/TWD)**

**D. BLAIR, DR. MICHAEL HOGAN,**
**ELIZABETH FARUM, DONALD SAWYER,**
**TERRI MAXAMILLION, ERIK SCOLOSSER,**
**JEFFREY NOMICKI, and YOLANDA**
**PERONI,**

                                          **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**CHRISTOPHER JUNE**
**545846**
Manhattan Psychiatric Center
600 East 125th Street
New York, New York 10035-6098
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                   **AARON M. BALDWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court are Defendants' objections to Magistrate Judge Lowe's

September 30, 2010 Order and Report-Recommendation, in which he recommended that the

Court grant in part and deny in part Defendants' motion to dismiss Plaintiff's complaint pursuant

to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 60 at 2.

## II. BACKGROUND[1]

**A.      Procedural and statutory background**

On January 12, 2004, Plaintiff pled guilty to one count of violating New York Penal

Law § 130.65(3) (sexual contact with a person less than eleven years of age).  *See* Dkt. No. 1 at

Exhibit "K."  Under New York law, the maximum sentence for this crime is seven-years'

imprisonment.  *See* N.Y. Penal Law §§ 70.00(2)(d), 130.65.  On April 5, 2004, Plaintiff was

sentenced to serve two and one-half years in state prison, followed by three years of post-release

supervision.  *See* Defendants' Exhibit "A."[2]  Plaintiff was scheduled to be released from custody

onto supervised release on May 8, 2006.

---

[1] The Court has adopted the "Background" facts from Magistrate Judge Lowe's Order and Report-Recommendation to the extent that the parties did not object to his factual recitation.

[2] Defendants request that the Court take judicial notice of several documents from state-court proceedings involving Plaintiff that are relevant to this action.  *See* Dkt. No. 39-1 at 1 n.1. Under Federal Rule of Evidence 201, "[a] court may take judicial notice, whether requested or not" of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)-(c); *see also United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (quoting Fed. R. Evid. 201(b)(c)) (other citation omitted).  A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings but not for the truth of the matter asserted in the other litigation.  *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quotation omitted).  Courts may also take judicial notice of another court's order to recognize the judicial act the order represents or the litigation subject matter.  *See City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995) (quotation omitted).

Based on this authority, the Court adopts Magistrate Judge Lowe's recommendation and grants Defendants' request.  In any event, Plaintiff attached to his complaint many of the documents of which Defendants requested that the Court take judicial notice.

On or about May 1, 2006, two psychiatrists examined Plaintiff pursuant to New York Mental Hygiene Law § 9.27. That statute provides for the involuntary commitment of "any person alleged to be mentally ill and in need of involuntary care and treatment[.]" N.Y. Mental Hyg. Law § 9.27(a). An application for such an involuntary commitment must be made by an individual with personal knowledge and must be accompanied by the certificates of two examining physicians. *See* N.Y. Mental Hyg. Law § 9.27(a)-(b). A doctor at the receiving facility must examine the patient and confirm the findings of the certifying physicians. *See* N.Y. Mental Hyg. Law § 9.27(e).

Under this statutory scheme, patients are not entitled to a hearing until after they have been involuntarily committed. *See* N.Y. Mental Hyg. Law § 9.31. Patients may demand a hearing within sixty days of their involuntary commitment. *See id.* If the patient does not make such a demand, the patient may be held for a maximum of sixty days, unless the director of the facility applies for a court order authorizing continued retention for up to six months. *See* N.Y. Mental Hyg. Law § 9.33. Upon receipt of such an application, the patient may demand a hearing on the need for involuntary retention. *See* N.Y. Mental Hyg. Law § 9.33(a). Section 9.33(a) authorizes the hospital to retain the patient while the retention application is pending. If the court grants the retention application, the patient may demand a rehearing and review of the prior proceeding before a jury. *See* N.Y. Mental Hyg. Law § 9.35. At the end of any initial six-month court-ordered retention, the director of the facility, following the same procedures, may obtain a retention order effective for up to an additional year. *See* N.Y. Mental Hyg. Law § 9.33(d).

Plaintiff alleges that, on May 5, 2006, he was instructed to go to the medical department at Marcy Correctional Facility. *See* Dkt. No. 1, Complaint, at ¶ 10. When Plaintiff arrived, a

nurse examined him. *See id.* at ¶ 11. After the examination, Plaintiff was instructed to remain in the medical department until a sergeant saw him. *See id.* at ¶ 12. When the sergeant arrived, he handcuffed Plaintiff and informed him that he was being sent to the Special Housing Unit ("SHU"). *See id.* at ¶ 13. Plaintiff was then transported to the SHU. *See id.* When he arrived at the SHU, he was strip searched and verbally threatened and harassed. *See id.* at ¶¶ 14-15. At one point, he was pushed into the wall he was facing. *See id.* at ¶ 15.

Once he was in his cell in the SHU, Plaintiff asked to see a lieutenant. *See id.* at ¶ 17. When the lieutenant arrived, Plaintiff asked why he had been detained in the SHU. *See id.* at ¶ 18. The lieutenant told Plaintiff to "fuck off" and walked away. *See id.*

On May 8, 2006, Defendant D. Blair, a parole agent, came to see Plaintiff in the SHU. *See id.* at ¶ 19. He presented Plaintiff with a "Certificate of Release to Parole Supervision." *See id.* Plaintiff alleges that the document originally reflected that Plaintiff would be paroled to an apartment in Union Center, New York, for which Plaintiff's father had cosigned a lease and paid a deposit on March 1, 2006. *See id.* at ¶ 29 and Exhibit "B." Plaintiff and Defendant Blair each signed the Certificate of Release. *See id.* at ¶ 22. When Plaintiff requested a copy, Defendant Blair ripped the document out of Plaintiff's hand and told him that he would get a copy. *See id.*

After about an hour, Defendant Blair returned to Plaintiff's cell, threw a copy of a document at Plaintiff, and left without further explanation. *See id.* at ¶ 23. Plaintiff examined the document and discovered that his Union Center address had been whited out and replaced with the words "Central New York Psychiatric Center" ("CNYPC"). *See id.* at ¶ 26. Plaintiff immediately advised two corrections officers that there was a problem with the document. *See*

*id.* at ¶ 25.  Later that day, Plaintiff was transported to CNYPC for an initial sixty-day commitment pursuant to Mental Hygiene Law § 9.27.  *See id.* at ¶ 27 and Exhibit "K."

On June 27, 2006, ten days before the expiration of Plaintiff's initial sixty-day commitment at CNYPC, Defendant Sawyer applied, pursuant to Mental Hygiene Law § 9.33, to retain Plaintiff for an additional six months at CNYPC.  *See id.* at Exhibit "K" at ¶ 3.  Plaintiff, through counsel, contested the application.  *See id.*

On October 10, 2006, Defendant Peroni conducted a Treatment Plan Review.  *See id.* at ¶ 39.  Defendant Peroni found that Plaintiff suffered from pedophilia and a personality disorder. *See id.* at ¶ 40.

Thereafter, on November 21, 2006, the New York State Court of Appeals held that Article 9 of the Mental Hygiene Law's procedures could not properly be used for individuals, like Plaintiff, who were serving a prison sentence immediately before being civilly committed.  *See New York ex rel. Harkavy v. Consilvio (Harkavy I)*, 7 N.Y.3d 607 (2006).  Rather, the court held that officials were required to comply with New York Correction Law § 402.  *See id.* at 614. New York Correction Law § 402 sets forth the procedure for involuntarily civil commitment of "any person undergoing a sentence of imprisonment[.]"  N.Y. Correct. Law § 402(1).  It requires examination by two court-appointed physicians, court approval of the commitment order after notice to the inmate, and a pre-commitment hearing at the inmate's request before a prisoner may be civilly committed.  *See id.*  The Court of Appeals directed that any

> petitioners remaining in OMH custody be afforded an immediate
> retention hearing pursuant to article 9 of the Mental Hygiene Law –
> now controlling – since they are no longer serving a prison
> sentence. . . . As to future candidates for immediate psychiatric
> hospitalization, prior to the expiration of a term of imprisonment,

> the State must proceed pursuant to Correction Law § 402, with all
> its attendant procedural requirements including court supervision,
> pretransfer notice and an opportunity to be heard within a
> reasonable period of time prior to the inmate's proposed release
> date.

*Harkvavy I*, 7 N.Y.3d at 614 (internal citation omitted).

One week later, Plaintiff's Mental Hygiene Law § 9.33 hearing was conducted in Oneida County Supreme Court.  Plaintiff alleges that Defendant Scolosser, who was part of Plaintiff's treatment team at CNYPC and who met with Plaintiff daily, "openly testified against the plaintiff" at the hearing.  *See* Dkt. No. 1 at ¶¶ 80-81, 89.  In his testimony, Defendant Scolosser "intentionally twist[ed] certain facts that the plaintiff . . . offer[ed] in group sessions so as to make the plaintiff look foolish, stupid, and not credi[ble]."  *See id.* at ¶ 88.  Plaintiff alleges that Defendant Scolosser falsely accused Plaintiff's mother of being an alcoholic.  *See id.* at ¶ 91.  Plaintiff contends that, at the hearing, Defendant Scolosser "took the position that even though the plaintiff participated in the Sex Offender Program at Gowanda Correctional Facility, that didn't mean anything."  *See id.* at ¶ 92.  Plaintiff claims that Defendant Scolosser was acting in concert with Defendant Elizabeth Farum.  *See id.* at ¶ 82.

On November 30, 2006, the New York Supreme Court issued an order pursuant to Mental Hygiene Law § 9.33 directing that Plaintiff be retained for an additional six months at CNYPC.  *See id.* at Exhibit "K" at ¶ 3.  Plaintiff moved for a rehearing pursuant to Mental Hygiene Law § 9.35.  The rehearing was never conducted.  On February 3, 2008, a stipulation of discontinuance was filed officially withdrawing the Article 9 petition.  Plaintiff remained confined at CNYPC.

In response to *Harkavy I*, New York enacted Article 10 of the Mental Hygiene Law,

-6-

effective April 13, 2007.  Article 10 created a new procedure for civilly committing sex offenders nearing the end of their prison terms.  Under Article 10, when a sex offender is nearing release, the New York State Department of Correctional Services ("DOCS")[3] must, "at least one hundred twenty days prior to the person's anticipated release," give notice to the New York State Attorney General and the New York State Commissioner of Mental Health.  N.Y. Mental Hyg. Law § 10.05(b).  The commissioner of mental health is then authorized to designate multidisciplinary staff to review the individual's records to determine whether he should be referred to a case review team for evaluation.  *See* N.Y. Mental Hyg. Law § 10.05(d).  If the individual is referred to a case review team, notice must be provided to him.  *See* N.Y. Mental Hyg. Law § 10.05(e).  If the case review team finds that the individual is a "sex offender requiring civil management," it must notify the attorney general and the individual in writing.  *See* N.Y. Mental Hyg. Law § 10.05(g).  The attorney general may then file a petition in the supreme court or county court of the county in which the individual is located, seeking to detain the individual in a psychiatric institution.  *See* N.Y. Mental Hyg. Law § 10.06(a).  Within thirty days of the filing of a petition, a court shall conduct a probable cause hearing.  *See* N.Y. Mental Hyg. Law § 10.06(g).  At the probable cause hearing, a judge must determine whether there is probable cause to believe that the individual may have a mental abnormality, i.e., is a sex offender requiring civil management. *See* N.Y. Mental Hyg. Law § 10.06(k).  If the judge finds probable cause, the individual "shall not be released pending the completion of [the] trial." *Id.*

---

[3] On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, now referred to as the New York State Department of Corrections and Community Supervision.  Since the events relevant to this action occurred before the merger, the Court will refer to this agency as "DOCS."

Thereafter, a trial shall be conducted within sixty days of the finding of probable cause. *See* N.Y. Mental Hyg. Law § 10.07(a). At the trial, the jury shall determine by clear and convincing evidence whether the individual "is a detained sex offender who suffers from a mental abnormality." N.Y. Mental Hyg. Law § 10.07(d).[4] If the jury determines that the individual is a detained sex offender who suffers from a mental abnormality, "the court shall consider whether the [individual] is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision." N.Y. Mental Hyg. Law § 10.07(f). If the court finds, by clear and convincing evidence, that the individual is a "dangerous" sex offender, the court may then either order the individual committed to a secure treatment facility or subject him to a regimen of strict and intensive supervision and treatment. *See id.*

On November 9, 2007, the New York State Attorney General's Office filed a petition seeking to detain Plaintiff pursuant to Mental Hygiene Law Article 10. *See* Dkt No. 1 at Exhibit "J." The petition alleged, based in part on the results of a "STATIC-99" test, that Plaintiff was 52% likely to re-offend within a six-year period. *See id.* at ¶ 11. Plaintiff alleges that STATIC-99 "is not permitted to be considered in . . . New York State" and that it "was mis-applied and unlawful." *See* Dkt. No. 1 at ¶ 121.

One week later, on November 16, 2007, the United States District Court for the Southern District of New York ("the Southern District") issued an order stating that it intended to issue a

---

[4] The Court notes that, at the time of Plaintiff's probable cause hearing, no court had issued a final order finding the statutes at issue here unconstitutional. Although the court in *Mental Hyg. Legal Serv. v. Cuomo*, 785 F. Supp. 2d 205 (S.D.N.Y. 2011), did find sections 10.06(k), 10.07(c), and 10.07(d) unconstitutional after Plaintiff's probable cause hearing, no final decision regarding the constitutionality of these provisions was issued prior to his probable cause hearing. In any event, since Plaintiff's civil commitment trial has yet to occur, the only provision potentially relevant to the present matter is section 10.06(k).

preliminary injunction barring then-governor Elliot Spitzer, then-Attorney General Andrew Cuomo, Michael Hogan, Diana Jones Ritter, and Brian Fischer from enforcing two provisions of Article 10, including the provision that mandates detention in the period between the probable cause hearing and the commitment trial even without a finding of current dangerousness. *See Mental Hyg. Legal Serv. v. Spitzer*, No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), *aff'd by Mental Hygiene Legal Servs. v. Paterson*, No. 07-5548-CV, 2009 WL 579445 (2d Cir. Mar. 4, 2009).

Plaintiff's probable cause hearing was conducted nineteen days later, on December 5, 2007.  The judge found that there was probable cause "to believe that [Plaintiff] [was] a sex offender requiring civil management under Article 10" and ordered that Plaintiff be held at CNYPC pending trial.  Despite the Southern District's order, the judge did not make a finding that Plaintiff was currently dangerous.  Trial was set for March 18, 2008.  *See* Dkt. No. 39 at Exhibit "J."  As discussed further below, it does not appear that, to date, Plaintiff's trial has ever been conducted.

On December 10, 2007, the Southern District issued the preliminary injunction contemplated in its November 16, 2007 order.  The court ordered that no individual could be detained pending an Article 10 trial "unless the court that directed his confinement has made or subsequently makes a specific, individualized judicial finding of probable cause to believe that the person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings[.]"

*Mental Hyg. Legal Serv. v. Spitzer*, No. 07 Civ 2935, Dkt. No. 41 at 1.[5]  The court noted that any

individual who was confined

> on the effective date of this order without the requisite findings . . .
> will remain so confined unless and until he makes a request for
> release, to the court that directed his confinement, on the grounds
> that there is not probable cause to believe that he is sufficiently
> dangerous to require confinement or that lesser conditions of
> supervision will suffice to protect the public during the pendency
> of the proceedings.

*Id.* at 1-2.

On the date of the Southern District's decision, as discussed above, Plaintiff was an individual

confined "without the requisite findings."

On May 8, 2008, Plaintiff was arrested for assaulting a CNYPC staff member.  *See* Dkt.

No. 39 at Exhibit "K."  On June 12, 2008, he pled guilty and was sentenced to time served.  *See*

*id.*  On June 30, 2008, the Parole Board revoked Plaintiff's post-release supervision on his

original 2004 conviction and returned him to DOCS custody.  *See id.*

On February 18, 2009, Plaintiff moved, through counsel, to dismiss the Article 10

petition.  *See id.* at 1.  Plaintiff argued that, by confining him to DOCS custody when his parole

was revoked rather than retaining him at CNYPC, the attorney general had essentially withdrawn

the Article 10 petition.  *See id.* at 2.  In the alternative, Plaintiff argued that, because his

anticipated release date was more than 120 days in the future, the attorney general could not

permissibly proceed with an Article 10 petition.  *See id.*

On March 20, 2009, Plaintiff filed this action.  *See* Dkt. No. 1.  On June 30, 2009, the

---

[5] The Southern District's preliminary injunction order is not available on either
Westlaw or Lexis.  Therefore, the Court has cited the docket number from the Southern District's
electronic filing system.

state court denied Plaintiff's motion to dismiss the Article 10 petition.

Plaintiff was released from DOCS custody to CNYPC on November 2, 2009.  *See* Dept. of Corr. Inmate Information, http://nysdocslookup.docs.state.ny.us.  As of November 5, 2009, his Article 10 trial had not yet occurred.  *See* Dkt. No. 39 at Exhibits "L"-"N."  In fact, nothing in the record before the Court indicates that the Article 10 hearing has ever been conducted.  The Court's docket, however, indicates that Plaintiff is no longer housed at CNYPC, but now resides at the Manhattan Psychiatric Center.  *See* Dkt. No. 66.[6]

Plaintiff alleges that his confinement from May 8, 2006, through May 8, 2008, violated the federal due process clause, that Defendant Hogan violated his rights by not holding an Article 10 trial, and that Defendants did not properly comply with Article 9.  *See* Dkt. No. 1 at ¶¶ 55, 108-110, 123, 126-129.  As a result of these alleged constitutional violations, Plaintiff seeks unspecified injunctive relief, compensatory damages including damages for loss of income and loss of consortium, punitive damages, and a letter of apology.  *See* Dkt. No. 1 at ¶¶ 131-142.


**B.**     **Magistrate Judge Lowe's recommendations**

In his September 30, 2010 Order and Report-Recommendation, Magistrate Judge Lowe recommended that the Court grant in part and deny in part Defendants' motion to dismiss. Specifically, he recommended that the Court

> (1) direct Defendants Hogan, Sawyer, Maxamillion and Peroni to
> answer Plaintiff's due process claim regarding his confinement at
> CNYPC from May 8, 2006, through May 6, 2008, and find that

---

[6] The Court notes that, on February 23, 2012, it received a letter from Ashby Breneman in which she stated that Plaintiff's new address was St. Lawrence Psychiatric Hospital.  *See* Dkt. No. 70.

they are not entitled to qualified immunity;

(2) grant Defendants' motion to dismiss Plaintiff's false imprisonment claim, all of his claims against Defendant Blair, his claims regarding denial of access to the courts, his Fourth Amendment claims regarding strip searches, his claims set forth in paragraphs 33, 48-49, 54, 56, 63, 70, 104, and 111-12, and his claims against Defendants Scolosser and Farum with leave to amend;

(3) grant Defendants' motion to dismiss Plaintiff's claims based solely on verbal harassment, his claims regarding CNYPC's grievance system or the failure of individual Defendants to respond to Plaintiff's grievances, and his Fourth Amendment claims regarding cell searches without leave to amend;

(4) direct Defendants Hogan Sawyer, Maxamillion and Peroni to answer Plaintiff's claims regarding the disciplinary unit, mail policies, telephone policies, media policies, clothing policies, the use of shackles, and dental care; and

(5) *sua sponte* dismiss Plaintiff's claims against Defendant Nowicki with leave to amend.

*See* Dkt. No. 60 at 37-38.[7]

## III. DISCUSSION

**A.    Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

However, when a party files "[g]eneral or conclusory objections, or objections which merely

---

[7] Magistrate Judge Lowe also found that neither *Heck v. Humphrey*, 512 U.S. 477 (1994), nor the *Rooker-Feldman* doctrine barred Plaintiff's complaint and that *Younger* abstention was not required.  *See* Dkt. No. 60 at 13-20.

recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citations omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Defendants object to Magistrate Judge Lowe's recommendations that the Court direct them to address Plaintiff's due process claim and his various claims regarding CNYPC policies and the conditions of his confinement, as well as his findings that they are not entitled to qualified immunity and that *Younger* abstention is not required.  *See generally* Dkt. No. 65

The Court will address each of Defendants' objections in turn.


**B.     Plaintiff's due process claim**

In his complaint, Plaintiff challenges his involuntary commitment at CNYPC as violative of his right to due process.  Essentially, Plaintiff argues that, on the day he was scheduled to be released to parole supervision, Defendants improperly involuntarily confined him at CNYPC without affording him due process and in violation of New York Correction Law § 402.

Magistrate Judge Lowe declined to dismiss this cause of action, finding that Plaintiff's alleged involuntary commitment without affording him a pre-commitment hearing was sufficient to allege a due process violation. *See* Dkt. No. 60 at 21. Defendants object to this finding and argue that Plaintiff's case is factually distinguishable from the case on which Magistrate Judge Lowe relied. *See* Dkt. No. 65 at 1-4. Moreover, they argue that, to find that Plaintiff was denied due process necessarily requires the Court to find that the Constitution affords prisoners about to be released greater procedural protections than any other person who may be confined pursuant to Article 9 of the Mental Hygiene Law who only has the right to a post-involuntary commitment hearing. *See id.* at 3.

To successfully state a claim under 42 U.S.C. § 1983 for denial of procedural due process, the plaintiff must show that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (quotation omitted). It is undeniable that "[i]nvoluntary confinement, including civil commitment, constitutes a significant deprivation of liberty requiring due process protection." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). "When a person's liberty interests are implicated, due process requires at a minimum notice and an opportunity to be heard." *Mental Hyg. Legal Serv. v. Spitzer*, No. 07 Civ. 2935, 2007 WL 4115936, *5 (S.D.N.Y. Nov. 16, 2007) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)).

Plaintiff was committed to CNYPC by way of the procedures set out in Article 9 of the Mental Hygiene Law, rather than New York Correction Law § 402. As such, he was not afforded an opportunity to be heard prior to his transfer to that facility. As such, the Court will assume for

-14-

purposes of this Memorandum-Decision and Order that Plaintiff has adequately pled a due process violation for his initial confinement.  *See* Dkt. No. 60 at 21-22 (citing cases).

However, after this initial confinement, Plaintiff has failed to allege a due process violation against any named Defendant.  Plaintiff claims that his continued confinement at CNYPC, after his initial pre-hearing confinement, violated his due process rights.  Specifically, Plaintiff argues that his confinement from May 8, 2006, through May 8, 2008, violated his federal due process rights.  *See* Dkt. No. 1 at ¶¶ 55, 108-110.  This argument, however, is without merit.

On June 27, 2006, ten days before the end of Plaintiff's initial sixty-day commitment at the CNYPC, Defendant Sawyer applied to retain Plaintiff for an additional six months at CNYPC pursuant to New York Mental Hygiene Law § 9.33.  *See* Dkt. No. 1 at Exhibit "K" at ¶ 3. Through counsel, Plaintiff contested the application.  *See id.*  On October 10, 2006, Defendant Peroni conducted a Treatment Plan Review and found that Plaintiff suffered from pedophilia and a personality disorder.  *See* Dkt. No. 1 at ¶¶ 39-40.  On November 30, 2006, after conducting a hearing on November 28, 2006, the New York Supreme Court (Julian, J.) issued a decision finding that Plaintiff was mentally ill and a danger to himself or others and ordered his retention at CNYPC.  *See* Defendants' Exhibit "C."

On December 29, 2006, Plaintiff filed a petition for an order to show cause seeking a rehearing of the court's November 28, 2006 order.  *See id.* at Exhibit "D."  The court granted the petition and set the hearing for January 4, 2007, at which Defendant Sawyer would have to show cause why Plaintiff was not entitled to a "trial *de novo* pursuant to Section 9.35 of the Mental Hygiene Law" on the question of Plaintiff's alleged mental illness and need for retention and why

Plaintiff should not be granted the right to hire a consulting expert. *See id.* On February 6, 2007, the New York Supreme Court (Hester, J.) granted the petition insofar as Plaintiff sought a "trial *de novo*" and the retention of a consultant. *See id.* at Exhibit "F."

On July 19, 2007, the New York State Office of Mental Health notified the Attorney General and the Commissioner of Mental Health that Plaintiff "may be a detained sex offender who is nearing an anticipated release," pursuant to New York Mental Hygiene Law § 10.05. *See id.* at Exhibit "G." After reviewing Plaintiff's medical records, the Case Review Team found that Plaintiff was "a sex offender requiring civil management." *See id.* In accordance with this finding, on November 9, 2007, the Attorney General's office filed an Article 10 petition seeking to continue Plaintiff's involuntary hospitalization. *See id.* at Exhibit "G." On December 5, 2007, the New York State Supreme Court (Tormey, J.) granted the Attorney General's petition to continue Plaintiff's involuntary confinement, finding "that there is probable cause to believe that [Plaintiff] is a sex offender requiring civil management under Article 10 of the Mental Hygiene Law" and set a trial date of March 18, 2008. *See id.* at Exhibit "I."

On February 6, 2008, the New York State Supreme Court (Hester, J.) accepted a stipulation that both parties had signed withdrawing and discontinuing with prejudice Plaintiff's challenge to his involuntary confinement and his motion for a new trial as to the pending Article 9 petition. *See id.* at Exhibit "H." Thereafter, on February 8, 2008, the Attorney General moved for a change of venue from Oneida to Tioga County for the trial on the Article 10 petition, *see id.* at Exhibit "J," which the court granted by Decision and Order dated March 12, 2008. *See id.* at Exhibit "K" at 1.

On May 8, 2008, Plaintiff was arrested for assaulting a staff member at CNYPC.

-16-

Thereafter, Plaintiff's post-release supervision was revoked, and he was remanded to the custody of DOCS.

As Magistrate Judge Lowe made clear, given this sequence of events, some of Defendants' actions could have possibly infringed on Plaintiff's constitutionally-protected liberty interests. The initial determination to detain Plaintiff without a hearing may have violated Plaintiff's due process rights; however, as discussed below, Defendants are entitled to qualified immunity for those actions.

**C.     Qualified immunity**

In his Order and Report-Recommendation, Magistrate Judge Lowe found that, at this point, Defendants are not entitled to qualified immunity with regard to Plaintiff's due process claims. *See* Dkt. No. 60 at 22-26. Magistrate Judge Lowe noted that the district courts in the Second Circuit are split as to whether defendants in cases such as this one acted objectively reasonably by following Article 9 of the Mental Hygiene Law rather than New York Correction Law § 402. *See id.* at 24. Defendants object to this finding, arguing, among other things, that Plaintiff's right to a hearing before being involuntarily committed was not clearly established. *See* Dkt. No. 65 at 5-6.

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit"). "[T]he salient question [in determining

-17-

qualified immunity] is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that "defendants bear the burden of showing that the challenged act was objectively reasonable" (citation omitted)).

In the present matter, Plaintiff was released from DOCS custody and sent to CNYPC on May 8, 2006.  *See* Dkt. No. 1 at ¶ 19.  On March 30, 2006, the Appellate Division, First Department, issued a decision in which it denied the petitioners' petition for a writ of habeas corpus.  *See New York ex rel. Harkavy v. Consilvio*, 29 A.D.3d 221 (1st Dep't 2006), *overruled by* 7 N.Y.3d 607 (2006).  In *Harkavy*, the petitioners were all convicted sex offenders who were certified as being dangerously mentally ill immediately prior to their scheduled release from prison, pursuant to New York Mental Hygiene Law § 9.27, and, therefore, involuntarily civilly confined.  *See id.* at 222-23.  The petitioners asserted that they were wrongfully denied due process and should have been afforded the procedural protections of New York Correction Law § 402.  *See id.*  Denying their claim, the court held that

> [t]he Correction Law clearly does not apply to the two petitioners whose applications were submitted on the date of their release.  As to the remaining 10 petitioners, whose applications were submitted from one to four days prior to their conditional release, release to parole supervision or expiration of their terms, there was no possibility that they would be returned back to DOCS' custody as the Correction Law contemplates.
>
> * * * * * * * * *
>
> Conversely, by its plain text, the Mental Hygiene Law

-18-

applies to petitioners (Mental Hygiene Law § 9.03).

*Id.* at 225-26.

Thereafter, the court distinguished *Vitek v. Jones*, 445 U.S. 480 (1980), and denied the

petitioners' claim that the proceeding under Article 9 of the Mental Hygiene Law violated their

Fourteenth Amendment due process rights. *See id.* at 227 (citations omitted).[8]

Given this authority, which was not overruled until **after** Plaintiff's involuntary civil

confinement, it is clear that Defendants' reliance on New York Mental Hygiene Law § 9.27 was

objectively reasonable. *See Lane v. Carpinello*, No. 9:07-cv-751, 2009 WL 3074344, *11

(N.D.N.Y. Sept. 24, 2009) (granting motion for summary judgment on qualified immunity

grounds because of the unsettled state of the law in New York and noting that, "prior to *Harkavy*,

the Second Circuit had generally approved of MHL § 9.27 as meeting both substantive and

procedural due process requirements" (citing *Project Release v. Provost*, 722 F.2d 950, 972-75

(2d Cir. 1983)). Moreover, although the New York Court of Appeals ruled that it was improper

to proceed under Article 9 of the Mental Hygiene Law, it also ordered that "those petitioners

remaining in OMH custody be afforded an immediate retention hearing pursuant to article 9 of

the Mental Hygiene Law – now controlling – since they are no longer serving a prison sentence

(see Correction Law § 404 [1])." *Harkavy I*, 7 N.Y.3d at 614. *Harkavy I* was decided on

November 21, 2006, and Plaintiff was afforded such a hearing on November 28, 2006. *See*

Defendants' Exhibit "C."

--------

[8] In *Vitek*, "the United States Supreme Court struck down a Nebraska statute which
allowed transfers of prisoners to a psychiatric hospital without a predeprivation judicial hearing."
*Harkavy*, 29 A.D.3d at 227 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)). The First Department
held that, "[s]ince petitioners were no longer prisoners at the time of their commitment, any *Vitek*
concerns are not present." *Id.*

-19-

Based on the foregoing, the Court respectfully rejects Magistrate Judge Lowe's recommendation and dismisses Plaintiff's due process cause of action on qualified immunity grounds.[9]

**D.      Claims that Defendants did not address**

Magistrate Judge Lowe found that Plaintiff's complaint included several allegations that Defendants' motion to dismiss did not address.  *See* Dkt. No. 60 at 34.  Defendants object to

_____

[9] In less than one month, Judge Sharpe issued two separate orders in which he adopted reports and recommendations from two different magistrate judges, in cases that are, aside from their procedural posture, factually indistinguishable from the present matter.  In *Lane v. Carpinello*, No. 9:07-cv-751, 2009 WL 3074344 (N.D.N.Y. Sept. 24, 2009), Judge Sharpe adopted Magistrate Judge Peebles' Report and Recommendation, in which Magistrate Judge Peebles recommended that the court grant the defendants' motion for summary judgment on the plaintiff's due process claim on qualified immunity grounds.  *See id.* at *11.  Magistrate Judge Peebles discussed the First Department's decision in *Harkavy* and found that the plaintiff's rights were not clearly established prior to the New York Court of Appeals decision in *Harkavy I.  See id.*  In *Bloomfield v. Wurzberger*, No. 9:08-cv-619, 2009 WL 3335892 (N.D.N.Y. Oct. 15, 2009), Judge Sharpe adopted a Report-Recommendation and Order, in which Magistrate Judge Treece recommended that the court deny the defendants' motion to dismiss the plaintiff's due process claim and find that "the qualified immunity defense is not readily apparent at this stage."  *Id.* at *10 (citations omitted).  Magistrate Judge Treece found that New York Correction Law § 402 satisfied "the clearly established procedures set forth in *Vitek*, while Article 9 does not[,]" and, therefore, the defendants' reliance on Article 9 was not objectively reasonable.  *Id.* at *9.

Despite this conflict in authority within this District, the Court finds that the correct result in the present matter is to grant Defendants' motion to dismiss on qualified immunity grounds. As Magistrate Judge Peebles and the First Department in *Harkavy* discussed, *Vitek* is factually distinguishable from the present matter in that Plaintiff, unlike the petitioners in *Vitek*, was no longer a prisoner at the time of his commitment to CNYPC.  Moreover, although courts should be hesitant to grant a motion to dismiss on qualified immunity grounds, the present matter is one such instance where qualified immunity is appropriate considering solely the facts alleged in the complaint and the unsettled state of the law in New York during the relevant time.  Defendants acted in an objectively reasonable manner in following the First Department's decision in *Harkavy*; and, therefore, the Court finds that they are entitled to qualified immunity regarding these claims.

these findings and argue for the first time in their objections that the Court should dismiss these causes of action as insufficient under *Iqbal* and as deficient under the otherwise applicable legal standards.

### 1. Confinement to MOD disciplinary unit

In his complaint, Plaintiff alleges that Defendant Hogan violated New York Mental Hygiene Law § 33.02(b) by placing him in the "'Mod' unit with no substantial physician 'written order,'" which demonstrates that his placement in the MOD was for punishment purposes and not to ensure his effective treatment. *See* Dkt. No. 1 at ¶ 50. Moreover, Plaintiff claims that Defendant Hogan "was made fully aware of many and various issues and problems which existed in the 'Mod' area" but failed to address them. *See id.* at ¶ 51.

> Some of these issues are specifically identified as: restrained to a day room some fourteen (14) hours; restrictions on any activity center and recreation, not allowed to treatment mall to engage in treatment programs; denied free nightly movie viewing; no art/crafts opportunities, forced against his will to remain in the "Mod" area day and night which in turn added extreme pain, stress and suffering.

*See id.* (citing Exhibit C, ¶ 5).

"The MOD unit is a self-contained residential and treatment floor for residents who have 'engaged in violence, threats of violence, or other chronic treatment interfering behaviors and as a result were treated in a setting that allowed for more containment and observation.'" *Yeldon v. Hogan*, No. 9:08-CV-769, 2010 WL 983819, *4 (N.D.N.Y. Mar. 15, 2010) (quotation omitted). Arbitrary placement in the MOD may give rise to a due process violation. *See id.* at *4-*5.

In the present matter, the Court accepts Magistrate Judge Lowe's recommendation and

denies Defendants' motion insofar as it seeks dismissal of this claim.  If Plaintiff's confinement in the MOD was arbitrary, Plaintiff may be able to establish a due process violation.  However, as *Yeldon* makes clear, placement in the MOD generally results from behavioral issues; and, therefore, if Defendants establish that Plaintiff was placed in the MOD because of legitimate penological concerns, Plaintiff's allegations will not give rise to a violation of his constitutional rights.

### 2. Mail, packages, telephone and newspapers

Plaintiff alleges that Defendants interfered with his incoming and outgoing mail, restricted his ability to receive packages at CNYPC, unreasonably limited him to $20.00 per month on an assigned calling card, and unreasonably limited his access to local newspapers and periodicals.  *See* Dkt. No. 1 at ¶¶ 52-53, 69, 71, 74.

Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.[10]  To state a claim for denial of access to the courts – in this case due to interference with legal mail – a plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"  *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quoting [*Lewis v. Casey*, 518 U.S. 343, 351,] 116 S. Ct. [2174,] 2180, ]135 L. Ed. 2d 606 (1996)]).  "[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's

_____

[10] Defendants did address Plaintiff's claim that they interfered with this legal mail in their motion to dismiss, and Magistrate Judge Lowe recommended that the Court dismiss that claim. *See* Dkt. No. 60 at 30-31.

actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00 CIV. 2042, 2001 WL 303713, *4 (S.D.N.Y. Mar. 29, 2001) (citing [*Lewis*, 518 U.S.] at 351).

In addition to the right of access to the courts, the First Amendment protects a prisoner's right to the free flow of incoming and outgoing mail. *See Heimerle v. Atty. Gen.*, 753 F.2d 10, 12-13 (2d Cir. 1985) (quotation and footnote omitted). Restrictions on prisoners' mail are justified only if they "further[ ] 'one or more of the substantial governmental interests of security, order, and rehabilitation' . . .[and] 'must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (quotation and other citation omitted). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Washington*, 782 F.2d at 1138-39; *Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir. 1982).

In his complaint, although Plaintiff alleges that Defendants obstructed his incoming and outgoing mail, he fails to set forth exactly who prevented him from receiving or sending mail, when the violation occurred, or for how long his rights were so violated. *See id.* at ¶¶ 52-53. These bare allegations do not state facts sufficient to raise Plaintiff's right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Moreover, as to Plaintiff's claim that Defendants interfered with his legal mail, Plaintiff fails to allege that Defendants acted maliciously or intentionally or that their actions caused any injury, such as the dismissal of an otherwise meritorious claim.

Although it is unclear whether Plaintiff will be able to allege facts sufficient to survive a motion for summary judgment on these claims, because of Plaintiff's *pro se* status, the Court grants Plaintiff leave to replead these causes of action.

Regarding Plaintiff's claim that Defendants' phone use policy violated his rights, other courts in this District have already addressed this specific policy at CNYPC and held that the policy is rational and reasonably related to legitimate concerns at the facility.  *See Yeldon*, 2010 WL 983819, at *8; *McChesney v. Hogan*, No. 9:08-CV-163, 2010 WL 3602660, *12 (N.D.N.Y. Aug. 17, 2010).  As such, the Court dismisses this claim with prejudice because allowing Plaintiff to replead would be futile.

Regarding Plaintiff's claim that Defendants infringed on his rights by limiting his access to local news on television, local newspapers and periodicals, again courts in this District have already ruled that these policies address legitimate concerns that do not unconstitutionally infringe on an involuntarily confined person's rights.  *See id.* at *9; *see also McChesney*, 2010 WL 3602660, at *10.  As such, the Court dismisses this claim with prejudice because allowing Plaintiff to replead would be futile.

Based on the foregoing, the Court accepts Magistrate Judge Lowe's recommendation to dismiss Plaintiff's interference with his legal mail claim; but the Court respectfully rejects Magistrate Judge Lowe's recommendation with respect to Plaintiff's claims regarding his regular mail and his claims regarding CNYPC's telephone restrictions and access to news, television, and periodicals policies, and dismisses these claims.

### 3. Appropriate clothing

Plaintiff asserts that he has been denied "appropriate personal clothing," because, since he is in "Level or Phase 1 of the SOTP program," he is restricted from ordering additional clothing through the mail until he reaches Level/Phase 2.  *See* Dkt. No. 1 at ¶ 76 and Exhibit "I" at 3-4. Plaintiff does not allege that he was denied the right to have clothing, only that he cannot order additional clothing from outside sources.

Again, Plaintiff's allegations are insufficient to allege a plausible claim that Defendants violated his rights.  *See McChesney*, 2010 WL 3602669, at *11 (discussing same clothing allowance policy at CNYPC); *see also* Dkt. No. 1 at Exhibit "I" at 3-4 (letter from the Mental Hygiene Legal Service discussing the clothing policy and stating that "[i]t does not appear at this time that there is a legal basis upon which to challenge the restriction on the ordering of extra clothing").  As such, the Court respectfully rejects Magistrate Judge Lowe's recommendation and dismisses this claim with prejudice.

### 4. Use of shackles and handcuffs

Plaintiff asserts that Defendants "abused their discretion in utilizing the use of shackles and handcuffs pursuant to Section 10.10(c) of the Mental H[ygiene] Law."  *See* Dkt. No. 1 at ¶ 77.  He complains that "on many occasions [he] was abused by the usage of shackles and handcuffs, as the defendant's intended to infl[i]ct pain and discomfort as part of their punishment upon the plaintiff."  *See id.* (citing Exhibit I, P. 4, ¶ 2).

Again, Plaintiff fails to provide any factual information to support this claim.  In fact, the letter to which he cites is actually a letter from the Mental Hygiene Legal Service addressing

several of his concerns.  In that letter, the Mental Hygiene Legal Service informed Plaintiff that

there was no legal basis upon which to challenge the use of handcuffs and other restraints "when

patients are transported on trips outside the hospital."  *See id.* at Exhibit "I" at 4.  Moreover, in a

letter Plaintiff sent to the "N.Y.S. Committee On Quality Care and Advocacy," Plaintiff

complained about the use of restraints "when transporting sex offenders to court."  *See id.* at

Exhibit "F" at 1.  He argued that

> [t]he chains and shackles utilized are those used by the N.Y.S.
> Department of Correctional Services for those prisoners with a
> record of assault on staff or escape.  The restraints used for all sex
> offenders is [sic] as follows: waist chain (attach handcuff to)
> handcuffs, black box (make handcuffs rigid), short chain (from
> hand to feet), shackles on feet.  This type of restraint is only used
> in extreme cases on prisoners yet is the standard at C.N.Y.P.C.

*See id.*

It is well-established that freedom from bodily restraint is a cornerstone of the guarantees

that the Due Process Clause provides.  *See Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).  "Yet

these interests are not absolute . . . [and] there are occasions in which it is necessary for the State

to restrain the movement of residents . . . to protect them as well as others from violence."  *Id.* at

319-20 (footnote omitted).  A balancing test between the individual's interest in his liberty and

the State's reason for using restraints is necessary, and if the use of restraints is "reasonably

related to legitimate government objectives and not tantamount to punishment," no constitutional

violation has occurred.  *Id.* (citation and footnote omitted).  Additionally, in determining what is

reasonable, "courts must show deference to the judgment exercised by a qualified professional . .

. [which] is presumptively valid . . . [unless] the decision . . . is such a substantial departure from

accepted professional judgment . . ." that it can be said to be the result of poor decision making.

*Id.* at 322-23 (citations omitted).

Although the Court has doubts that this claim is sufficient to survive a motion for summary judgment, the Court adopts Magistrate Judge Lowe's recommendation and declines to *sua sponte* dismiss this claim.  *See Youngberg*, 457 U.S. at 316-23 (noting the substantial deference given to officials in determining when and how to restrain a prisoner).

### 5. Failure to address dental problems

Plaintiff alleges that, since his confinement at the CNYPC, "he has suffered severely with dental problems which involved various degrees of inf[ ]ections, pain and suffering.  The defendant's [sic] knew or should have known of the serious dental condition was, but failed and/or neglected to properly address this issue dental problem."  *See* Dkt. No. 1 at ¶ 78. Moreover, Plaintiff claims that Defendants failed to ensure that they had a "proper dental carrier" to provide adequate care for him and others similarly situated.  *See id.* at ¶ 79.  Finally, Plaintiff asserts that he "was provided with certain medications which coped with the dental problem. The plaintiff experienced extreme pain and suffering at month's [sic] at a time.  The plaintiff experienced vast amounts of loss of sleep because of dental pain and suffering."  *See id.*

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "'the unnecessary and wanton infliction of pain.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quotation omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66.  More

-27-

than negligence is required, "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66 (citation omitted).

The test for a § 1983 claim alleging deliberate indifference to a serious medical need is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted).   Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  *See id.* (quotation omitted).   "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quotation omitted).  Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting [*Chance*,] 143 F.3d at 702).  The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case.  *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 703 (citation omitted).

-28-

Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnote omitted).  "[M]ere disagreement over the proper treatment does not create a constitutional claim[,]" as long as the treatment was adequate.  *Chance,* 143 F.3d at 703. Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation and other citation omitted).

First, Plaintiff fails to allege the personal involvement of any named Defendant and fails to allege that he requested and was denied dental care.  Moreover, he fails to specify what he suffered from and when he suffered from this unnamed ailment.  Since the Court does not know what Plaintiff suffered from or for how long, it is impossible to determine whether Plaintiff suffered from a sufficiently serious medical condition to support a deliberate indifference cause of action.  Further, it is unclear whether Plaintiff ever requested dental care and, if so, whether the requested care was denied.

As such, the Court dismisses Plaintiff's deliberate indifference to his serious medical needs claims.  However, in light of his *pro se* status and the fact that it is not clear whether any amendment would be futile, the Court will allow Plaintiff the opportunity to replead this claim.

### E.      Plaintiff's remaining claims

In his complaint, Plaintiff also asserts causes of action alleging false imprisonment, verbal harassment, failure of CNYPC to have a grievance system in place, denial of access to the courts, unlawful search and seizure of his cell and person, and violations of the Mental Hygiene

Law and the Patient Bill of Rights.  *See* Dkt. No. 1 at ¶¶ 7, 14-15, 18, 22-26, 33, 47-49, 52-54, 56-57, 58, 61-62, 73, 100-101, 104, 111-12.  In his Order and Report-Recommendation, Magistrate Judge Lowe recommended that the Court dismiss each of these claims.  *See* Dkt. No. 60 at 26-34.  Neither party objected to Magistrate Judge Lowe's recommendations regarding these claims.

The Court has reviewed these claims and agrees with Magistrate Judge Lowe's analysis. As such, the Court adopts Magistrate Judge Lowe's recommendation and dismisses these causes of action.


## IV. CONCLUSION

After carefully considering Magistrate Judge Lowe's Order and Report-Recommendation, Defendants' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Lowe's September 30, 2010 Order and Report-Recommendation is **ACCEPTED** in part and **REJECTED** in part; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part; and the Court further

ORDERS that Plaintiff may file an amended complaint within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order;[11] and the Court further

ORDERS that this matter is referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 27, 2012
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[11] As a result of this Memorandum-Decision and Order, in his third amended complaint, Plaintiff may replead the following claims: (1) his claim based on his confinement in the MOD disciplinary unit, (2) his First Amendment claim based on his allegation that Defendants interfered with his legal mail, (3) his claim based on Defendants' use of shackles and handcuffs, and (4) his deliberate indifference claim based on Defendants' alleged failure to address his dental problems.