```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────────────────

CHRISTOPHER JUNE,

                              Plaintiff,

                                              9:09-CV-0323
v.                                             (FJS/TWD)

MICHAEL HOGAN, DONALD SAWYER,
TERRI MAXYMILLIAN[1], YOLONDA PERONI,

                              Defendants.

─────────────────────────────────────────────────

APPEARANCES:                                                 OF COUNSEL:

CHRISTOPHER JUNE, 81710
Plaintiff pro se
St. Lawrence Psychiatric Center
1 Chimney Point Drive
Ogdensburg, NY 13669

HON. ERIC T. SCHNEIDERMAN                          GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# REPORT-RECOMMENDATION and ORDER

     This pro se civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff

─────────────────

        [1]     This defendant is currently listed in the caption as Terri "Maxamillion." In a declaration filed in support of the pending motion, this Defendant spells her name Terri "Maxymillian." (Dkt. No. 84 at 1.) The Clerk is directed to correct the caption to list this defendant as "Terri Maxymillian."

Christopher June claims that Defendants violated his federal due process rights during his involuntary civil confinement as a sex offender at the Central New York Psychiatric Center ("CNYPC"). (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 83.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and enter judgment in their favor.

## I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff's complaint in this action is sixty-seven pages long and includes many claims regarding his confinement to and conditions at CNYPC. (Dkt. No. 1.) As a result of previous motions in this case, only two claims remain: (1) a due process challenge to Plaintiff's placement in the Motivation on Deck Program ("MOD"); and (2) a due process challenge to Defendants' use of shackles and handcuffs. (Dkt. No. 71 at 21-22, 25-27; Dkt. No. 75 at 3.) Only four Defendants remain in the action: Michael Hogan, Donald Sawyer, Terri Maxymillian, and Yolonda Peroni. (Dkt. No. 75 at 2-3.) The following factual and procedural summary will be limited to the remaining claims and Defendants.

The complaint alleges that Plaintiff was placed in the MOD "with no substantial physician 'written order.'" (Dkt. No. 1 ¶ 50.) Plaintiff alleges that this "clearly demonstrates" that he was placed in the MOD as a form of punishment rather than as a form of "effective treatment." *Id.* The complaint alleges that Defendant Hogan was "fully aware" of problems in the MOD. *Id.* ¶ 51. Plaintiff identifies some of these problems as:

> restrained to a day room some fourteen (14) hours; restrictions on any activity center and recreation, not allowed to treatment mall to engage in treatment programs; denied free nightly movie viewing; no art/crafts opportunities, forced against his will to remain in the "Mod"

>area day and night which in turn added extreme pain, stress and suffering.

*Id.*

Defendant Maxymillian, the Director of Treatment Services for the Sex Offender Treatment Program ("SOTP") at CNYPC, declares that "[a]cts of physical aggression or the direct threat of such will frequently lead to transfer to the MOD." (Dkt. No. 84 ¶ 9.) Such transfers "can be based upon an acute event or based on ongoing maladaptive behaviors." *Id.* Defendant Maxymillian declares that Plaintiff had repeated behaviors – including verbal and physical altercations with other residents, refusal to abide by facility rules, and problems with his treatment programs – that "required him to remain on a unit away from those residents successfully engaging in treatment." *Id.* ¶¶ 14-39. Defendant Maxymillian further declares that "[r]esidents on MOD continue to be offered 20 hours of programming per week as do residents not on MOD status." *Id.* ¶ 11.

The complaint alleges that Defendants "abused their dis[cre]tion in . . . the use of shackles and handcuffs." (Dkt. No. 1 ¶ 77.) Plaintiff alleges that he was "abused by the usage of shackles and handcuffs" on "many occasions." *Id.* The paragraph of the complaint regarding shackles and handcuffs references an exhibit. *Id.* The referenced exhibit discusses "the use of handcuffs and other restraints when patients are transported on trips outside the" facility. *Id.* at 58. This Court has previously noted that Plaintiff's claim regarding shackles and handcuffs thus appears to involve the use of restraints during travel outside the facility. (Dkt. No. 71 at 25-26.) William Owen, III, the Chief Safety Officer at CNYPC, declares that "[t]ransport staff are required to produce residents to courts throughout the State of New York as well as area hospitals. The layout of each of these locations and security staffing/protocols is typically

3

unfamiliar to staff." (Dkt. No. 83-2 ¶ 6.) Because "every resident of the SOTP has been committed by court order, in most instances against their will, they may endanger transport staff health and safety, may have violent propensities or may present flight risks were they to be escorted outside the secure perimeter without safety and security devices." *Id.* ¶ 5. Safety and security devices "have always been used when people committed to the facility are transported outside of the facility." *Id.* ¶ 7.

Plaintiff filed the complaint in this action on March 20, 2009. (Dkt. No. 1.) On December 7, 2009, Defendants moved to dismiss the complaint. (Dkt. No. 39.) Magistrate Judge George H. Lowe[2] issued a Report-Recommendation on September 30, 2010, recommending that the motion be granted in part and denied in part. (Dkt. No. 60.) Defendants objected to the Report-Recommendation. (Dkt. No. 65.) On March 28, 2012, the Court adopted Judge Lowe's recommendation in part and rejected it in part, dismissing many of Plaintiff's claims, some with leave to amend. (Dkt. No. 71.) Plaintiff did not file an amended complaint. On July 13, 2012, the Court issued an order stating that, as a result of Plaintiff's failure to file an amended complaint, only two claims remained against four Defendants. (Dkt. No. 75.) As discussed above, the two remaining claims are due process challenges to Plaintiff's placement in the MOD and to the use of shackles and handcuffs. *Id.* at 3. The four remaining Defendants now move for summary judgment. (Dkt. No. 83.) Plaintiff has not opposed the motion, despite being warned of the consequences of failing to respond. (Dkt. No. 83 at 3; Dkt. No. 86.)

---

[2] Magistrate Judge Lowe retired on February 9, 2012. This case was reassigned to me on February 10, 2012. (Dkt. No. 68.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are undisputed in the record; and (2) assure itself that,

---

[3] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

based on the undisputed material facts, the law indeed warrants judgment for the defendants. *See Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding pro se, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *See* L.R. 7.1(a)(3); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Champion*, 76 F.3d at 486.

## III. ANALYSIS

### A. Placement in the MOD

Plaintiff claims that Defendants violated his right to due process by placing him in the MOD and that there were "problems" with conditions there. (Dkt. No. 1 ¶¶ 50-51.) Defendants move for summary judgment dismissing this claim, arguing that it fails because there is no evidence that Plaintiff was placed in the MOD arbitrarily rather than because of legitimate penological concerns. (Dkt. No. 83-3 at 3-7.[4]) Defendants are correct.

Individuals, like Plaintiff, who have been civilly committed retain substantive due process rights. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). In determining whether such rights have been violated, courts must weigh "the individual's interest in liberty against the State's asserted

---

[4] Page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

reasons for restraining" it. *Id.* at 320. In weighing these interests, courts must "make certain that professional judgment was in fact exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321. Thus, only a "substantial departure from accepted professional judgment, practice, or standards" can support a substantive due process claim brought by an involuntarily committed individual against high-level staff members who are expected to exercise professional judgment. *Id.* at 323; *Vallen v. Carrol*, No. 02 Civ. 5666 (PKC), 2005 U.S. Dist. LEXIS 20840, at *25-26, 2005 WL 2296620, at *8 (S.D.N.Y. Sept. 20, 2005); *Yeldon v. Hogan*, No. 9:08-CV-769 (NAM/RFT), 2010 U.S. Dist. LEXIS 23821, at *13-15, 2010 WL 983819, at *5 (N.D.N.Y. Mar. 15, 2010[5]) (finding that placement in the MOD did not violate involuntarily committed sex offender's due process rights).[6]

Here, Defendant Maxymillian, a licensed psychologist, declares that Plaintiff was placed in the MOD because the need to ensure "a safe and secure treatment environment" for other residents required that Plaintiff "remain on a unit away from those residents successfully engaging in treatment." (Dkt. No. 84 ¶¶ 1, 7, 39.) The record thus shows that Plaintiff was placed in the MOD for legitimate reasons based on professional judgment. There is no indication that Defendants departed substantially from accepted professional judgment, practice, or standards. Thus, Plaintiff has not raised a triable issue that his placement in the MOD violated

---

[5] Lexis and Westlaw list different dates for this decision. The Court has used the date listed by Westlaw, which reflects the date that the district court judge adopted the magistrate judge's recommendation.

[6] The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7

his due process rights. Moreover, Defendant Maxymillian declares that Plaintiff continued to receive programming on the MOD. *Id.* ¶ 11. Plaintiff has not opposed the motion for summary judgment and thus has not refuted that declaration. There is thus no evidence of the "problems" of which Plaintiff complains. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

**B.      Use of Shackles and Handcuffs**

Plaintiff claims that Defendants violated his due process rights by using handcuffs and shackles when transporting him outside the facility. (Dkt. No. 1 ¶ 77; Dkt. No. 1 at 58.) Defendants move for summary judgment dismissing this claim. (Dkt. No. 83-3 at 7-10.) As with Plaintiff's due process claim regarding placement in the MOD, his claim regarding the use of shackles and handcuffs is analyzed under the balancing test set out in *Youngberg*. *See Abdul-Matiyn v. Allen*, No. 06-CV-1503 (GTS/DRH), 2010 U.S. Dist. LEXIS 102972, at *38-40, 2010 WL 3880687, at *12  (N.D.N.Y. Mar. 4, 2010) (applying *Youngberg* balancing test to grant CNYPC officials' motion for summary judgment of claim that handcuffing involuntarily committed individual during transport from state prison to CNYPC violated his due process rights).[7] Mr. Owen declares that because "every resident of the SOTP has been committed by court order, in most instances against their will, they may endanger transport staff health and safety, may have violent propensities or may present flight risks were they to be escorted outside the secure perimeter without safety and security devices." (Dkt. No. 83-2 ¶ 5.) The record thus shows that shackles and handcuffs were used for legitimate reasons based on professional

---

[7]     Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 83-3 at 42-56.)

judgment.  There is no indication that Defendants departed substantially from accepted professional judgment, practice, or standards.  Thus, Plaintiff has not raised a triable issue that the use of shackles and handcuffs violated his due process rights.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 83) be **GRANTED**; and it is further

**ORDERED** that the Clerk change the docket to reflect the spelling of Defendant Terri Maxamillion's last name as "Maxymillian"; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Vallen v. Carrol*, No. 02 Civ. 5666 (PKC), 2005 U.S. Dist. LEXIS 20840, 2005 WL 2296620 (S.D.N.Y. Sept. 20, 2005); and *Yeldon v. Hogan*, No. 9:08-CV-769 (NAM/RFT), 2010 U.S. Dist. LEXIS 23821, 2010 WL 983819 (N.D.N.Y. Mar. 15, 2010).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 16, 2014
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge